J-S22002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NADYA SENYK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| UKRAINIAN CATHOLIC | : | No. 1163 EDA 2021 |
| ARCHEPARCHY OF PHILADELPHIA | : | |
| AND JOHN DOE | | |

Appeal from the Order Entered May 21, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  200701967

BEFORE:  BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 9, 2023**

Nadya Senyk appeals from the May 21, 2021 order sustaining the demurrer filed by the Ukrainian Catholic Archeparchy of Philadelphia ("the Archeparchy")[1] and dismissing her claims with prejudice pursuant to the prompt service rule first announced by our Supreme Court in ***Lamp v. Heyman***, 366 A.2d 882 (Pa. 1976).  We affirm.

We glean the relevant factual and procedural history from the certified record.  On August 2, 2018, Senyk visited a gravesite located within St. Mary's

_____

[1] Although Senyk listed an unnamed individual ("John Doe") as a defendant in her writ of summons, she did not include this putative person as a party in her complaint.  ***Compare*** *Praecipe* for Writ of Summons, 7/28/20, at 1 (unpaginated) **with** Complaint, 4/7/21, at 1-5.  Furthermore, our review has uncovered no averments in the certified record speaking to the arguable relevance of this illusory defendant.  Thus, while John Doe remains listed as a party in the caption above, we will not discuss him further in this writing.

Ukrainian Cemetery at 438 Cedar Road, Fox Chase, Pennsylvania. There, Senyk slipped, fell, and sustained physical injuries, including a fractured wrist. She secured representation to pursue negligence claims against the Archeparchy as the owner and operator of the cemetery, which were subject to a two-year statute of limitations. *See* 42 Pa.C.S. § 5524(2). On July 28, 2020, Senyk timely commenced this civil action four days prior to expiration by filing a *praecipe* for a writ of summons. *See* Pa.R.C.P. 1007(1). Thereafter, however, Senyk made no effort to serve the Archeparchy with original process in a manner that complies with the Pennsylvania Rules of Civil Procedure ("the Rules"). *See* Pa.R.C.P. 400-05 ("Service Generally"). No formal attempts at service of the *praecipe* are evident from the record.

The record reflects that Senyk's counsel was communicating with the Archeparchy's third-party insurance administrator, Sphere Risk Partners ("SRP"), both prior to and after commencement of this lawsuit. ***See*** Memorandum in Opposition to Preliminary Objections, 5/17/21, at Exhibits A-B. The earliest such communication is a January 15, 2020 email from SRP complex claims specialist Michael Simpson to Senyk's attorney, wherein Simpson shared a document concerning the Archeparchy's insurance coverage. Thereafter, communication between SRP and Senyk's counsel ceased for the next seven months. On July 27, 2020, Senyk's counsel sent an email to Simpson apologizing for the "delay" and forwarding a photograph of the area where Senyk fell. ***Id***. at Exhibit A. In this email, Senyk's attorney requested Simpson to call at his earliest convenience, along with the following

statement: "Due to the fact that we are approaching statute we would like to talk to you as to how we will approach this matter." *Id*. On July 28, 2020, Senyk commenced this civil action. Over the next few days, Senyk's counsel and Simpson exchanged a number of additional emails concerning documentation and photographs, during which Senyk's counsel made no mention of the filing of the *praecipe*.

Communications between SRP and Senyk's attorney again ceased for nearly six months. On January 4, 2021, Senyk's counsel sent the *praecipe* to Simpson. *Id*. at Exhibit B. There is no direct corroboration in the record that Simpson shared any of these communications with his company's client. Nonetheless, counsel for the Archeparchy entered her appearance in this matter on January 5, 2021 . *See* Entry of Appearance, 1/5/21, at 1.

On April 7, 2021, Senyk filed her complaint, which was served upon the Archeparchy two days later.[2] The Archeparchy filed timely preliminary objections in the nature of a demurrer pursuant to Pa.R.C.P. 1028(a)(4) asserting, *inter alia*, that Senyk had failed to comply with *Lamp*. *See* Preliminary Objections, 4/27/21, at ¶¶ 11-21. As a procedural threshold, Senyk objected that since *Lamp* implicates the statute of limitations, it must

_____

[2] Upon service of the complaint on April 9, 2021, the trial court properly obtained personal jurisdiction over the Archeparchy. *See McCreesh v. City of Philadelphia*, 888 A.2d 664, 666 n.1 (Pa. 2005) ("[I]n every case applying [*Lamp v. Heyman*, 366 A.2d 882 (Pa. 1976)], including the case *sub judice*, the plaintiff eventually complied with [the Rules] and formally served the defendant with process. Indeed, without this eventual service jurisdiction would never attach, and any particular case would never be litigated through the courts.").

be raised in new matter pursuant to Pa.R.C.P. 1030(a). On the merits, she did not dispute the lack of formal service, but argued that the Archeparchy should be deemed to have received "actual notice" of commencement due to the above-described communications between her counsel and SRP.

On May 19, 2021, the trial court sustained the Archeparchy's demurrer as to *Lamp* and dismissed Senyk's claims with prejudice. Senyk filed a timely notice of appeal. The trial court did not direct her to submit a concise statement pursuant to Pa.R.A.P. 1925(b) and Senyk did not file one. The trial court filed an opinion pursuant to Rule 1925(a).

Senyk has raised the following issues for our consideration:

1. Whether the trial court erred in dismissing Senyk's complaint upon preliminary objections based [*Lamp*] where the statute of limitations is an affirmative defense which may not be determined via preliminary objections, rather via judgment on the pleadings and/or summary judgment and where the Archeparchy has attached a document to the preliminary objections which was not a judicial or public record or a pleading.

2. Whether the statute of limitations is violated where Senyk filed a timely writ of summons and later files a [civil complaint], which is not served within the first thirty (30) days of its filing, however, the Archeparchy was aware of the limitation, participated in the litigation and was not prejudiced by the untimely service.

Senyk's brief at 4 (cleaned up).

Senyk's first claim asserts that the trial court erred in considering the merits of the Archeparchy's invocation of *Lamp* since these arguments were raised in a demurrer. *See* Senyk's brief at 10-13. The inquiry of "[w]hether a trial court may address the merits of a statute of limitations defense, when

- 4 -

improperly raised in preliminary objections as opposed to new matter, requires this Court to interpret the Rules. Thus, our standard of review is *de novo* and our scope of review is plenary." ***Sayers v. Heritage Valley Med. Group, Inc.***, 247 A.3d 1155, 1159 (Pa.Super. 2021).

As a general matter, our precedent provides that an affirmative defense implicating the statute of limitations should be raised in new matter as opposed to preliminary objections. ***Id***. (citing Pa.R.C.P. 1030(a)). However, as noted above, the Archeparchy has framed its invocation of ***Lamp*** in this case as a demurrer. ***See*** Preliminary Objections, 4/27/21, at ¶¶ 11-21 (citing Pa.R.C.P 1028(a)(4)). Thus, this case presents an identical procedural posture presented in ***Sayers***, wherein defendants to a civil action raised the applicability of ***Lamp*** in a demurrer. ***See Sayers***, ***supra*** at 1160-61. While acknowledging ***Lamp*** is generally cognizable under Rule 1030(a), this Court simultaneously endorsed a well-recognized "exception" to this procedural requirement, which permits a trial court to "address an affirmative defense on the merits when it has been briefed, argued, and considered by the trial court, and it is apparent from the record that, if the affirmative defense were properly raised in new matter, the defending party would have a right to judgment on the pleadings." ***Id***. at 1160.

Here, the Archeparchy's invocation of ***Lamp*** was fully briefed by the parties and, as we discuss *infra*, its entitlement to relief under this precedent is clearly evident from the face of the record. Under these circumstances, "'[n]othing is to be gained by sending the parties back to the trial court to set

their procedural house in order before coming once again to this Court with the identical controversy.'" ***Sayers***, ***supra*** at 1160 (quoting ***Brown v. Hahn***, 213 A.2d 342, 346 (Pa. 1965)). Thus, we discern no error on the part of the trial court in considering the merits of the Archeparchy's demurrer.

Preliminarily, Senyk also argues that the Archeparchy submitted inappropriate documents in support of its preliminary objections, to wit, a certified docket report and an affidavit from its agent responsible for accepting legal process. ***See*** Senyk's brief at 12-13; ***see also*** Memorandum in Support of Preliminary Objections, 4/27/21, at Exhibits A-B. Since these documents were not pleadings, Senyk contends it was inappropriate for the trial court to consider them in ruling upon the Archeparchy's demurrer. As a general matter, preliminary objections in the nature of a demurrer must ordinarily be resolved on the basis of the pleadings alone. ***See Kane v. State Farm Fire and Cas. Co.***, 841 A.2d 1038, 1041 (Pa.Super. 2003). However, the Rules also provide that "[i]f an issue of fact is raised, the court shall consider evidence by depositions or otherwise." Pa.R.C.P. 1028(c)(2).

Again, ***Sayers*** is instructive. Therein, this Court relied upon Rule 1028(c)(2) to conclude that it is appropriate for a trial court to consider factual materials outside of the pleadings in adjudicating a demurrer pursuant to ***Lamp***. ***See Sayers***, ***supra*** at 1162 n.7 (noting with approval that the trial court "permitted limited discovery" concerning "improper service of a writ of summons" raised in a demurrer). Instantly, the Archeparchy properly raised

factual issues, *i.e.*, whether Senyk attempted to serve the Archeparchy with a copy of the writ of summons in good faith pursuant to *Lamp*. To the extent the trial court considered evidence outside of the pleadings, such supplemental fact-finding was warranted and appropriate. *Id*. at 1162 n.7. Accordingly, we determine that no relief is due as to the issues raised by Senyk's first claim for relief.

We now turn to Senyk's second argument, which challenges the merits of the trial court's ruling and alleges that its application of the *Lamp* rule was erroneous. *See* Senyk's brief at 14-29. This Court "reviews an order sustaining, or overruling, preliminary objections for an error of law and in so doing, must apply the same standard as the trial court." *Sayers*, *supra* at 1161. It is well-established that "where noncompliance with *Lamp* is alleged, the trial court must determine in its sound discretion whether a good-faith effort to effectuate notice was made[.]" *Gussom v. Teagle*, 247 A.3d 1046, 1048 (Pa. 2021). Since the Archeparchy's preliminary objections were in the nature of a demurrer, we also keep the following basic legal principles in mind:

> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

***Sayers***, ***supra*** at 1161 (cleaned up).

The Rules permit commencement of a civil action by the filing of a *praecipe* for a writ of summons. ***See*** Pa.R.C.P. 1007(1). Timely filing of such original process tolls the applicable statute of limitations. ***See Johnson v. Allgeier***, 852 A.2d 1235, 1237 (Pa.Super. 2004). Thereafter, the plaintiff has thirty days in which to accomplish service before the writ expires. ***See*** Pa.R.C.P. 401(a). The Rules, however, permit the plaintiff to reissue the writ "at any time and any number of times." ***See*** Pa.R.C.P. 401(b)(1)-(2). Thus, "[s]o long as the plaintiff file[d] her writ . . . before the expiration of the statute of limitations applicable to her cause of action, the original filing, as well as any subsequent reissuances or reinstatements, tolls the statute of limitations." ***Gussom***, ***supra*** at 1048.

Prior to the announcement of ***Lamp***, there were "abuses of process by plaintiffs who tolled the statute of limitations by filing a writ of summons, had the writ repeatedly reissued, and deliberately failed to notify the defendant of the pending litigation." ***McCreesh v. City of Philadelphia***, 888 A.2d 664, 668 n.10 (Pa. 2005). Such procedure, "while technically compliant with the [Rules], nonetheless defeated the purpose of the statute of limitations, which is to protect defendants from stale claims." ***Id***. Thus, our Supreme Court held that "a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." ***Lamp***, ***supra*** at

889. Our Supreme Court has subsequently refined this case law to require that a plaintiff undertake "a good-faith effort to effectuate notice of commencement of the action." *Farinacci v. Beaver County Indus. Dev. Authority*, 511 A.2d 757, 759 (Pa. 1986). Conceptually, a "good faith attempt at service" is "a kind of condition subsequent that must be fulfilled to complete the commencement of the action begun by filing the *praecipe*." *Johnson*, *supra* at 1237. The determination of what constitutes a good faith effort is assessed on a case-by-case basis. *See Englert v. Fazio Mechanical Services, Inc.*, 932 A.2d 122, 124 (Pa.Super. 2007).

In *Lamp*, our Supreme Court also exhorted plaintiffs to "comply with local practice as to the delivery of the writ[.]" *Lamp*, *supra* at 889. Thereafter, this Court "struggled" to apply this aspect of *Lamp* uniformly, with "some panels requiring plaintiffs to comply strictly with [the Rules] related to service of process" while others adopted "a more flexible approach, excusing [a plaintiff's] initial procedurally defective service where the defendant has actual notice of the commencement of litigation and is not otherwise prejudiced[.]" *McCreesh*, *supra* at 666. In *McCreesh*, our Supreme Court endorsed the more flexible approach by expressing that when "plaintiffs' improper actions in serving original process put defendants on actual notice of the commencement of [the action], trial courts should 'dismiss only those claims where plaintiffs have demonstrated an intent to stall the judicial

machinery or where plaintiffs' failure to comply with the Rules has prejudiced defendant.'" *Gussom*, *supra* at 1048 (quoting *McCreesh*, *supra* at 674).

Thus, a plaintiff may "fulfill her good-faith service mandate without strictly complying with the service rules as long as her efforts resulted in actual notice of the lawsuit to the defendant[.]" *Id*. at 1056.  However,

> *McCreesh* did nothing to modify a plaintiff's duty to act diligently to serve notice of the commencement of an action so as not to undermine the policies that drive the statute of limitations.  Nor, for that matter, did *McCreesh* change the rule clarified in *Farinacci* that the plaintiff carries an evidentiary burden to prove that she made a good-faith effort to effective service of process in a timely manner. . . .
>
> In sum, *Lamp* and its progeny require a plaintiff to make a good-faith effort in diligently and timely serving process on a defendant.  When a defendant presents a factual dispute as to whether a plaintiff fulfilled this duty, the plaintiff carries an evidentiary burden to demonstrate that she met her good-faith mandate.  If a plaintiff presents credible evidence that she made this attempt at service, then she fulfills her requirement to prove good faith.  If a plaintiff does not present such evidence, then she has failed to satisfy her evidentiary burden, regardless of whether her actions (or inaction) were intentional, unintentional, or otherwise.  However, pursuant to *McCreesh*, a trial court should not punish a plaintiff by dismissing her complaint where she is able to establish that her improper but diligent attempts at service resulted in the defendant receiving actual notice of the commencement of the action, unless the plaintiff's failure to serve process properly evinced an intent to stall the judicial machinery or otherwise prejudiced the defendant.

*Id*. at 1056-57.

The relevant facts in the instant case are not in dispute.  On July 28, 2020, Senyk commenced this lawsuit by filing a *praecipe* for a writ of summons five days before the statute of limitations was initially set to expire.

Thereafter, Senyk made no effort to formally serve the Archeparchy with the writ of summons in compliance with the Rules.[3] Nonetheless, Senyk alleges the Archeparchy received actual notice of this lawsuit pursuant to *McCreesh*, such that her failure to provide technically compliant service of original process should be excused. Specifically, she relies upon the above-described emails exchanged between her counsel and Simpson prior to, and after, commencement of this civil action. *See* Memorandum in Opposition to Preliminary Objections, 5/17/21, at Exhibits A-B. Senyk contends these communications with the Archeparchy's insurance carrier were sufficient to provide the Archeparchy with timely notice under *McCreesh*. *See* Senyk's brief at 25 ("[The Archeparchy's] counsel and insurance company have been intimately aware of the efforts to resolve the case and aware of the existence of these proceedings[.]"). We disagree.

Initially, we note that the communications between Senyk's counsel and SRP between January 2020 and July 2020 spoke only to the sheer possibility that Senyk might file a lawsuit naming the Archeparchy. *See* Memorandum in Opposition to Preliminary Objections, 5/17/21, at Exhibit A (indicating only that Senyk's counsel wished to "talk" about how they would "approach this matter"). Even the post-commencement emails from Senyk's counsel were

---

[3] It was not until April 9, 2021, that Senyk succeeded in formally alerting the Archeparchy to the commencement of this lawsuit by serving a copy of her complaint upon the defendant within two days of its filing. By that point, nine months had elapsed from the commencement of the lawsuit.

silent regarding the critical fact that a civil action had actually been filed. Our precedent is clear that advising a defendant of the mere "potential for litigation" is not actual notice and "cannot suffice" pursuant to *Lamp*. *Englert*, *supra* at 127. Thus, Senyk cannot rely upon the emails exchanged between January and July 2020 to establish the existence of actual notice.

The only remaining of-record email that speaks to actual notice in this matter is the January 4, 2021 message in which Senyk's counsel transmitted a copy of the writ of summons to Simpson. *See* Memorandum in Opposition to Preliminary Objections, 5/17/21, at Exhibit B. Generally, "communication between a plaintiff and a defendant's insurance carrier does not qualify as a good faith attempt at service" under *Lamp*. *Williams v. Shannon*, 255 A.3d 1268 (Pa.Super. 2021) (non-precedential decision at 14) (citing *Moses v. T.N.T. Red Star Exp.*, 725 A.2d 792, 798 (Pa.Super. 1999); *Ferrara v. Hoover*, 636 A.2d 1151, 1153 (Pa.Super. 1994)). In *Williams*, this Court considered whether a plaintiff who made no efforts to serve a writ of summons beyond emailing a copy of the filing to the defendant's insurance carrier had complied with *Lamp*. *See Williams*, *supra* at 16 ("[Plaintiff] admits that the only action he took was to email a copy of the writ of summons to the [defendant's] insurance agent."). In *Williams*, we determined that an email to an insurance adjuster was not sufficient to provide actual notice pursuant to *McCreesh* because there was "no evidence that the insurance agent, in turn, sent the writ of summons to the [defendants]." *Id*.

- 12 -

Turing to the case at bar, Senyk concedes that her only effort to provide notice of the filing of the *praecipe* to the Archeparchy was the January 4, 2021 email to Simpson. ***See*** Senyk's brief at 26-28. Unlike in ***Williams***, however, there is evidence in the record suggesting that Simpson **did** share the email containing Senyk's writ of summons with the Archeparchy's counsel. Specifically, the day after Senyk's counsel sent the email to Simpson, the Archeparchy's counsel entered his appearance. ***See*** Entry of Appearance, 1/5/21, at 1. This sequence of events supports a reasonable inference that Senyk's email communication directly led to the Archeparchy's counsel entering an appearance. Thus, we find that ***Williams*** is inapposite here.

However, our case law concomitantly provides that actual notice provided pursuant to ***McCreesh*** must still satisfy "the purpose of the statute of limitations[.]" ***McCreesh***, ***supra*** at 674. As our Supreme Court has explained, "***McCreesh*** did nothing to modify a plaintiff's duty to act diligently to serve notice of the commencement of an action so as not to undermine the policies that drive the statute of limitations." ***Gussom***, ***supra*** at 1056. Accordingly, actual notice under ***McCreesh*** must still be provided "in a timely manner." ***Id***. at 1057. There is no requirement, however, that a plaintiff effectuate notice prior to the expiration of the statute of limitations. ***See Johnson***, ***supra*** at 1237. Rather, timeliness under ***Lamp*** is a largely subjective matter that depends upon the particular facts of the case, as this

- 13 -

Court recently observed in *Jimenez v. Burlington Stores, Inc.*, 1409 EDA 2021, 2022 WL 14805575, (Pa.Super. Oct. 26, 2022):

> In the specific context of *Lamp*, this Court has found that a plaintiff may act in good faith even where many months elapse between initial, unsuccessful attempts at service and successful notification by alternative means. . . . Thus, we find no support for the proposition that *Lamp* is violated merely because it takes a plaintiff a significant amount of time to complete service.
>
> The touchstone of Lamp is a good-faith **effort** to complete service that evinces a lack of intent to stall the judicial machinery or prejudice the defendant.

*Id*. at 14-15 (emphasis in original; cleaned up). Accordingly, while there is no bright-line chronological requirement in evaluating timeliness, the plaintiff is always required to undertake diligent efforts to effectuate notice under *Lamp* by whatever means, *i.e.*, formal or actual notice.

Assuming, *arguendo*, that Senyk's January 4, 2021 email succeeded in providing actual notice to the Archeparchy for the purposes of *McCreesh*, that email was not transmitted until more than five months after Senyk's filing of the writ of summons. Prior to the sending of this message, she had advanced no other relevant efforts to provide the Archeparchy with either formal or actual notice. These events are analogous to the situation presented in *Bellan v. Penn Presbyterian Med. Ctr.*, 271 A.3d 506 (Pa.Super. 2022). Therein, a plaintiff commenced a medical malpractice action by filing a complaint in September 2020. The plaintiff made an initial, unsuccessful attempt to serve the defendant with a copy of his complaint by formal means. Thereafter, the plaintiff made no further attempts at service for five months. In February

- 14 -

2021, the plaintiff sent a copy of the complaint to the defendant's counsel via email, which was accepted. *See Bellan*, *supra* at 511-12. Ultimately, the trial court in *Bellan* dismissed the plaintiff's complaint under *Lamp*. On appeal, we affirmed due to the plaintiff's failure to provide "actual notice of his action **in a timely manner**[.]" *Id*. at 512 (emphasis added). In so doing, we observed that "our courts have never modified a plaintiff's duty to act diligently to serve notice of the commencement of an action so as not to undermine the policies that drive the statute of limitations." *Id*. (citing *Gussom*, *supra* at 1056).

The situation presented by the instant case is even less in Senyk's favor than that of the plaintiff in *Bellan*. Specifically, our review of the record confirms that Senyk made no initial attempt whatsoever to serve the Archeparchy with original process in a manner that would have complied with the Rules. Thereafter, she did nothing for nearly one-half of a year before taking any action to alert the Archeparchy that a lawsuit was underway. These belated efforts are inadequate to satisfy Senyk's "evidentiary burden" to prove that she made a "good-faith effort" to effectuate notice "in a timely manner." *Gussom*, *supra* at 1056. There is simply no evidence that arguably speaks to her diligence. As such, it is immaterial whether "her actions (or inaction[s]) were intentional, unintentional, or otherwise." *Id*. at 1057. Furthermore, since Senyk has failed to adduce evidence of timely actual notice in this

matter, we need not address whether she intended to stall the proceedings or whether the Archeparchy was prejudiced. ***See Williams***, ***supra*** at 16.

Based on the foregoing, we find no abuse of discretion or error of law in the trial court's conclusion that Senyk violated ***Lamp***. Thus, we affirm the trial court's order sustaining the Archeparchy's preliminary objections and dismissing Senyk's claims for relief with prejudice.

Order affirmed.

Judges McCaffery and Sullivan concur in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/9/2023